## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ARNOLD KUERBITZ,

               Plaintiff,

     v.

ANDREW E. MEISNER,
WILLIAM MANN,
WANDRIE WILLIAM,
MICHAEL J. BOUCHARD,
AND UNKNOWN OAKLAND
COUNTY SHERIFF DEPU-
TIES,

             Defendants.

Case No. 16-12736
Hon. Terrence G. Berg

**OPINION AND ORDER SUSTAINING IN PART AND
OVERRULING IN PART DEFENDANTS' OBJECTIONS
(DKT. 35), OVERRULING PLAINTIFF'S OBJECTIONS
(DKT. 36), ADOPTING IN PART AND REJECTING IN PART
REPORT AND RECOMMENDATION (DKT. 32), GRANTING
DEFENDANTS' SECOND MOTION TO DISMISS (DKT. 26),
DENYING DEFENDANTS' MOTION TO STAY
DISPOSITIVE MOTION DEADLINE (DKT. 48), AND
DENYING PLAINTIFF'S MISCELLANEOUS MOTIONS
(DKTS. 29, 31, 47, and 49)**

## I.   Introduction

Plaintiff Arnold Kuerbitz's house was foreclosed upon after De-

fendants Oakland County Treasurer, Andrew E. Meisner ("Meis-

ner"), and Oakland County Senior Assistant Corporation Counsel,

William J. Mann ("Mann"), filed a tax delinquency complaint against him. Dkt. 13-3, Pg. ID. 102. After a hearing was held on February 3, 2016, the Oakland County Circuit Court entered a judgment of foreclosure for Plaintiff's property. Dkt. 13-3, Pg. ID 102.

Defendants Meisner and Mann then scheduled an auction to sell the property. *See* Dkt. 1, Pg. ID 8. In response, in a letter Plaintiff sent to the judge overseeing the foreclosure proceedings, Plaintiff stated that he was planning to appear at the auction with people who had concealed-carry permits, arrest Meisner, Mann, and anyone else that tried to stop him, and videotape everything for the world to see. Dkt. 13-6, Pg. ID 111. In his Complaint, Plaintiff stated that he also intended to object to the legality of the auction. Dkt. 1, Pg. ID 8. Learning of Plaintiff's plan, Defendants William, Bouchard, and unknown Oakland Country Sheriff Deputies denied Plaintiff access to the auction. Dkt. 1, Pg. ID 8. Plaintiff then brought this lawsuit, alleging that the denial violated his First and Fourteenth Amendment rights. Dkt. 1, Pg. IDs 8-10. The Parties have filed multiple motions upon which Magistrate Judge Stafford

issued a Report and Recommendation (Dkt. 32, R&R). Defendants and Plaintiff have both timely objected to the R&R. For the reasons outlined below, Defendants' objections are **SUSTAINED IN PART and OVERRULED IN PART**; Plaintiff's objections are **OVERRULED**; the Report and Recommendation is **ADOPTED IN PART AND REJECTED IN PART**; Defendants' motion to dismiss (Dkt. 26) is **GRANTED**; and Plaintiff's Motions (Dkts. 29, 31, 47, and 49) are **DENIED**. Because the Court must dismiss the case, Defendants' Motion to Stay Dispositive Motion Filing Deadline (Dkt. 48) is **DENIED AS MOOT**.

## II. Background

The relevant facts in this case were summarized in a previous R&R that this Court adopted, and those facts are incorporated herein by reference. Dkt. 25 (R&R dated February 1, 2017); Dkt. 27 (Order adopting same). The following are subsequent procedural developments:

- Defendants filed a second motion to dismiss (Dkt. 26);
- Plaintiff filed a motion for relief from judgment, objection, and to strike Defendants' original motion to dismiss (Dkt. 29);

- Plaintiff filed a motion to prohibit ex parte communications and a demand for a due process hearing (Dkt. 31);
- Magistrate Judge Stafford issued an R&R that recommended denying the motions (Dkt. 32);
- Defendants objected to this R&R (Dkt. 35);
- Plaintiff objected to this R&R (Dkt. 36);

The objections of both parties are now before this Court.

## III. Standard of Review

Any party may object to and seek review of an R&R, but must act within fourteen days of service of the R&R. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections a party has to an R&R. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991). The district court must make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. 28 U.S.C. § 636(b)(1)(c).

## IV. Analysis

Both parties have filed objections to the R&R. Dkts. 35, 36. The Court will summarize Magistrate Judge Stafford's recommendations and then address the objections of each party.

Magistrate Judge Stafford provided recommendations on the following motions:

- Defendants' second motion to dismiss (Dkt. 26);
- Plaintiff's motion for relief from judgment (Dkt. 29);
- Plaintiff's motion to prohibit ex parte communications and demand for a due process hearing (Dkt. 31).

Defendants' second motion to dismiss argued that Defendants lawfully excluded Plaintiff from the foreclosure auction because, in Plaintiff's Complaint, he alleges that he intended to arrest Meisner and Mann at the sheriff's sale. Dkt. 26, Pg. ID 241. Magistrate Judge Stafford recommended denying the motion. Dkt. 32, Pg. ID 338. Specifically, the R&R stated that Plaintiff did not allege in his Complaint that he intended to arrest Meisner and Mann at the sheriff's sale, so that intention could not be considered when deciding a Rule 12(b)(6) motion. Dkt. 32, Pg. ID 335. As to this recommendation, for the reasons set out below, the Court concludes that Defendants' objections concerning the second motion to dismiss are

well-taken, and that the R&R should therefore be rejected in part and that the motion to dismiss should be granted.

Plaintiff's motion for relief from judgment, Dkt. 29, was essentially a restatement of legal principles and arguments that Plaintiff has raised in every motion he has filed in this lawsuit. Dkt. 32, Pg. ID 338. Magistrate Judge Stafford recommended denying the motion. Dkt. 32, Pg. ID 339. The R&R explained that Plaintiff had failed to demonstrate either a "palpable defect" in the Court's previous decision or how correction of that defect would result in a favorable judgment for Plaintiff. Dkt. 32, Pg. IDs 338-39. As to this recommendation, the Court concludes that it should be adopted.

Plaintiff's motion to prohibit ex parte communications and demand for a due process hearing, Dkt. 31, was also essentially a repetition of previous arguments and legal principles that Plaintiff has already brought before the Court. Dkt. 32, Pg. ID 338. Magistrate Judge Stafford similarly recommended denying the motion. Dkt. 32, Pg. ID 339. As to this recommendation, the Court concludes that Plaintiff's objections thereto are not well taken and it should be adopted.

### a. Defendants' Objections

Defendants object only to Magistrate Judge Stafford's recommendation that the Court deny Defendants' second motion to dismiss. They raise five objections:

1. The R&R Incorrectly States "Kuerbitz did not allege in his complaint that he intended to conduct a citizen's arrest"
2. The R&R Incorrectly Frames the Question Presented As Whether Kuerbitz Stated a Plausible First Amendment Claim Where He Intended to Lawfully Object to the Auction
3. The Court Erred by Concluding Defendants' Motion to Dismiss Required Review of Factual Matters Outside of the Pleadings
4. The R&R Failed to Address Defendants' Qualified Immunity Argument
5. The R&R's Failure to Make Factual Findings and Legal Conclusions on Defendants' Qualified Immunity Arguments Makes It Unclear Whether Defendants' Have an Immediate, Interlocutory Appeal of Right

Dkt. 35. The Court will address each in turn.

### i. Objection 1: The R&R incorrectly states that "Kuerbitz did not allege in his complaint that he intended to conduct a citizen's arrest"

The R&R found that Plaintiff did not allege in his Complaint that he intended to arrest Meisner and Mann at the sheriff's sale. Dkt. 32, Pg. ID 335. The R&R then found, based on Plaintiff's Complaint

alone, that there was no factual basis for finding that Plaintiff intended to incite violence or threaten Defendants at the sale. Dkt. 32, Pg. ID 335.

Defendants object to this finding, arguing that Plaintiff did state in his Complaint that he intended to arrest Defendants at the auction, thereby providing a basis for finding that Plaintiff intended to incite violence or threaten Defendants. Dkt. 35, Pg. ID 354.

In reviewing the language of the Complaint, the Court finds that Defendants' objection is well founded. Kuerbitz stated in his Complaint that he intended to arrest Meisner and Mann at the sheriff's sale:

> Federal Law. By denying this Totally Disabled and Property Tax Exempted Pro Se Plaintiff to access the Public Auction in Public Building to Object; Lawfully advise the Public that this Disabled Plaintiff's Property on Auction was still pending on State Appellate Courts with Stay of Judgments Filed; and/or to Lawfully execute a State Citizens Arrest of the Defendant(s) et al pursuant to clearly established

Dkt. 1, Pg. ID 11 (color highlighting added).

### ii. Objection 2: The R&R incorrectly frames the question presented

Because the R&R found that Plaintiff's Complaint did not allege an intent to conduct a citizen's arrest, the R&R framed Plaintiff's

First Amendment claim only in terms of whether a state actor's excluding of Plaintiff from the auction, due to his intent to lawfully object, would be sufficient to state a claim of a First Amendment violation that could survive Defendants' motion to dismiss. Dkt. 32, Pg. ID 333. Defendants object to this framing and argue that the issue is whether Plaintiff stated a plausible First Amendment claim where he intended both to object to the sheriff's sale and to conduct a citizen's arrest of Meisner and Mann. Dkt. 35, Pg. IDs 355-56.

This objection is also well taken. Because Plaintiff stated in his complaint that he intended to arrest Meisner and Mann at the sheriff's sale, the proper framing of the issue must account for that allegation.

### iii. Objection 3: The R&R incorrectly concluded that Defendants' motion to dismiss required review of factual matters outside of the pleadings

The R&R concluded that Defendants' motion to dismiss would require the Court to look beyond Plaintiff's complaint because it relied on Plaintiff's intention to arrest Meisner and Mann. Dkt. 32, Pg. ID 337. As indicated above, because the Complaint stated that Plaintiff intended to conduct a citizen's arrest of Defendants, the

motion to dismiss did not rely on facts outside the pleadings. The R&R also did not address the merits of Defendant's argument that Plaintiffs intent to arrest was not protected speech because it concluded that such a determination required the consideration of facts not alleged in the Complaint. Dkt. 32, Pg. ID 337.

Defendants objected, arguing that because the complaint included the allegation that Plaintiff intended to arrest Meisner and Mann at the sheriff's sale, it was not necessary for the Court to look outside of the Complaint in order to consider whether Plaintiff's intended conduct was protected speech when analyzing Defendants' motion. Dkt. 35, Pg. ID 357.

Defendants' third objection is also well-founded. As explained above, the Complaint does allege that Plaintiff intended to arrest Meisner and Mann at the sheriff's sale. Thus, the Court need not go outside the Complaint when analyzing Defendants' motion.

Because Defendants' first three objections have merit, and because the identified errors substantially affect the analysis of De-

fendant's motion to dismiss, the Court will not adopt the recommendation that the motion to dismiss be denied, but will analyze Defendants' motion anew.

### b. Defendants' Motion to Dismiss

Defendants argue that dismissal is proper because Plaintiff's allegations fail to state a claim that the Defendants violated his First Amendment rights. Dkt. 26, Pg. ID 241. A Rule 12(b)(6) motion tests whether a plaintiff has pleaded a legally sufficient claim, and provides for dismissal when a plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, "to state a claim to which relief is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). When assessing whether a claim is plausible, the Court must accept all of the complaint's factual allegations as true. *See Ziegler v. IBP Hog Mkt, Inc.*, 249 F.3d 509, 512 (6th Cir. 2001).

Defendants argue that Plaintiff's speech was not protected under the First Amendment because the auction was not a public forum.

Dkt. 26, Pg. ID 241. Further, Defendants maintain that even if Plaintiff's speech was found to be protected, Defendants performed a constitutionally-permissible, content-neutral exclusion of speech that would have disrupted the function of the forum and hindered the effectiveness of the forum's purpose. Dkt. 26, Pg. ID 241.

Plaintiff chose not to respond to Defendants' second motion to dismiss, and instead filed a motion to strike Defendants' motion. But Plaintiff's motion to strike makes no argument as to why the Court should not dismiss the case. Dkt. 29, Pg. ID 283. Defendants treated Plaintiff's motion as a response and filed a reply to it. Dkt. 30. There, Defendants argued that Plaintiff failed to respond to Defendants' motion in any meaningful way and that the Court is not required to "conjure allegations" on a litigant's behalf or create a claim for the non-movant that is not explicitly present in the pleadings. Dkt. 30, Pg. ID 312 (citing *Clark v. National Travelers Life Ins. Co.,* 518 F.2d 1167, 1169 (6th Cir. 1975)).

Accepting all of Plaintiff's allegations in his complaint as true, when Defendants prevented Plaintiff from entering the auction, they prevented him from fulfilling his goals at the auction, which

included objecting to the sheriff's sale of Plaintiff's foreclosed home and conducting a citizen's arrest of Defendants. The Sixth Circuit uses a three-step analysis to determine whether an individual's First Amendment rights were violated: (1) whether the speech is protected under the First Amendment, (2) whether the applicable forum is public or nonpublic under the public-forum doctrine, and (3) whether the government's prohibition on the speech passes muster under the First Amendment by applying the appropriate standard for the applicable forum. *Parks v. City of Columbus*, 395 F.3d 643, 647 (6th Cir. 2005).

The Court will apply the *Parks* test to determine whether Plaintiff has sufficiently stated a claim to survive Defendants' motion to dismiss. As discussed in more detail below, the Court concludes that: (1) Plaintiff's threat to arrest Defendants was not protected speech; (2) Plaintiff failed to allege sufficient facts to support a reasonable inference that the auction occurred in a traditional public forum or a designated public forum; and (3) Defendants' conduct of excluding Plaintiff from the auction did not violate the First Amendment.

### i. Whether Plaintiff's Desired Conduct is Protected Under the First Amendment

The first step in the *Parks* inquiry requires the Court to determine whether certain speech is protected under the First Amendment. *Id.* Plaintiff's complaint states that his First and Fourteenth Amendment rights were violated when Defendants prevented him from entering the public foreclosure auction to: (1) object to the sale of his former property, and (2) conduct citizen arrests of Defendants and potentially others in order to "prosecute said named Defendants for committing Felony Fraud, Perjury, [and] Conspiracy." Dkt. 1, Pg. ID 8. The Court finds that Plaintiff's intention to object to the sale plainly reflects a desire to express speech that is protected under the First Amendment. Consequently, as to this speech, the Court must analyze the allegations of the Complaint under the remaining two steps of the *Parks* analysis. With respect to Plaintiff's desire to perform citizen arrests of Defendants, however, the Court must first determine whether Plaintiff's desired conduct qualifies as expressive speech that warrants protection under the First Amendment.

The Supreme Court has found some forms of expressive or symbolic conduct to fall within the scope of First Amendment protection. *See, e.g., Rumsfeld v. Forum for Academic & Instit. Rights, Inc.,* 547 U.S. 47, 66 (2006) ("In *O'Brien*, we recognized that some forms of symbolic speech were deserving of First Amendment protection. But we rejected the view that conduct can be labeled speech whenever the person engaging in the conduct intends thereby to express.") (internal citations omitted). To determine whether particular conduct qualifies as expressive speech subject to protection under the First Amendment, courts must consider the nature of the activity at issue in combination with the factual context and environment in which it was undertaken. *Fowler v. Board of Educ. Of Lincoln County, Ky.,* 819 F.2d 657, 662-63 (6th Cir. 1987) (citing *Spence v. Washington*, 418 U.S. 405, 409-10 (1974)). If a party can show "an intent to convey a particularized message . . . and in the surrounding circumstances the likelihood was great that the message would be understood by those who viewed it," then the activity falls within the scope of the First and Fourteenth Amendments. *Id.*

While Plaintiff's allegation that he wished to "lawfully object" to the auction plainly indicates an intent to convey a particularized message, Plaintiff also stated he wanted to arrest and prosecute Defendants Meisner and Mann. Dkt. 32, Pg. ID 337. Therefore, this Court must independently address whether Plaintiff's desire to conduct a citizen's arrest reflects an intent by Plaintiff to convey a particularized message, and whether, based on the surrounding circumstances, that message had a great likelihood of being understood by those who viewed it.

Plaintiff's complaint shows that Plaintiff believed he had been wronged by the state foreclosure process—and Defendants' actions particularly—and wanted to conduct citizen arrests to "prosecute said named Defendants for committing Felony Fraud, Perjury, Conspiracy, [Accessory] After the Fact, Harboring Felons, and [Retaliation] . . ." Dkt. 1, Pg. ID 11. Plaintiff develops his position by stating in his motion, Dkt. 17, that there had been a "conspiracy to cover-up criminal FELONY Fraud" by the Defendants, which Plaintiff felt left him with no option but to arrest Defendants. *Id.* at Pg. ID 164-65. Plaintiff believed that he had been the victim of a felony.

He wished to express his dissatisfaction about the foreclosure, the subsequent sheriff's sale, and Defendants' alleged "felonious" conduct by carrying out the arrest and prosecution of Defendants. Viewed in the light most favorable to Plaintiff, these facts support a reasonable inference that he possessed a subjective intent to convey a particularized message through his citizen arrests.

Plaintiff must also show an objective element in order for his desired conduct to qualify for First Amendment protection—namely, that there was a great likelihood his message would be understood by those who observed his conduct. The Supreme Court has afforded First Amendment protection to expressive conduct in some situations where the conduct clearly sends a message, but those cases differ greatly from the facts of this case. For example, in *Spence v. State of Washington,* the Appellant hung a United States flag affixed with a peace symbol because he "wanted people to know that [he] thought America stood for peace." 418 U.S. 405, 409 (1974). The Court explained that the "context in which a symbol is used for purposes of expression is important, for the context may

give meaning to the symbol." *Id.* at 410. In finding Appellant's conduct to qualify for First Amendment protection, the Court explained:

> Appellant's activity was roughly simultaneous with and concededly triggered by the Cambodian incursion and the Kent State tragedy . . . A flag bearing a peace symbol and displayed upside down by a student today might be interpreted as nothing more than bizarre behavior, but it would have been difficult for the great majority of citizens to miss the drift of appellant's point at the time that he made it."

*Id.* at 410; *see also, Tinker v. Des Moines Independent Community School District*, 393 U.S. 503 (1969) (wearing black armband was conduct akin to pure speech); *Brown v. Louisiana*, 383 U.S. 131, 141-42 (sit-in by black students in "whites only" library was expressive symbolic speech); *West Virginia State Board of Education v. Barnette*, 319 U.S. 624, 633-34 (flag salute is a form of expression); *Stromberg v. California,* 283 U.S. 359, 368-69 (display of red flag is expressive conduct).

But the facts before the Court in this case are much different from those cited above. If Plaintiff had succeeded in attempting to carry out these arrests in the manner he envisioned, auction attendees might possibly have observed Plaintiff and his comrades,

potentially with weapons drawn, attempting to arrest the County Treasurer, the Assistant Corporation Counsel, and other public officials. While an arrest by a police officer may be recognized as an expression of a suspicion of wrongdoing, it is highly unlikely that anyone observing the citizen's arrests planned by Plaintiff would have understood the message Plaintiff sought to convey—or indeed any message at all other than violence, force, and confusion. Nor does the Complaint describe anything about the context and surrounding circumstances—a tax foreclosure auction—that would have lent meaning to Plaintiff's conduct such that observers would understand the message Plaintiff intended to convey.

The allegations in the Complaint are such that the surrounding circumstances do not demonstrate a great likelihood that Plaintiff's conduct would be understood by those who viewed it as conveying any kind of a particularized message. Therefore, the planned conduct of Plaintiff, to carry out citizen arrests, does not qualify as expressive speech and does not trigger First Amendment protection.

As to Plaintiff's intention to enter the foreclosure sale to express his objection to the sale of his former property, this is clearly a form

of protected speech. Regarding that speech, the Court must discuss whether the Complaint sets out a claim for a violation of the First Amendment in light of the other factors in *Parks*.

### ii. Whether the applicable forum is public or nonpublic

The second *Parks* factor requires the Court to "identify the nature of the forum, because the extent to which the Government may limit access depends on whether the forum is public or nonpublic." *Parks*, 395 F.3d at 647 (quoting *Cornelius v. NAACP Legal Def. Fund,* 473 U.S. 788, 797 (1985)). The Supreme Court has recognized three types of public fora: (1) the traditional public forum; (2) the designated public forum; and (3) the limited public forum. *Miller v. City of Cincinnati*, 622 F.3d 524, 534 (6th Cir. 2010) (citing *Pleasant Grove v. Summum,* 555 U.S. 460 (2009)).

"Traditional public fora include sidewalks, parks, and other areas that by tradition or by government fiat are open to public assembly and debate." *Id.* (internal citations omitted). Restrictions on speech in a traditional public forum receive strict scrutiny—the

government may only exclude a speaker when the exclusion is necessary to serve a compelling state interest, and the exclusion is narrowly drawn to achieve that interest. *Id.*

"The government creates a designated public forum when it opens a piece of public property to the public at large, treating it as if it were a traditional public forum." *Miller,* 622 F.3d at 534. Importantly, "the government does not create a public forum by inaction or by permitting limited discourse, but only by intentionally opening up a nontraditional forum for public discourse." *United Food & Commercial Workers Local 1099 v. City of Sidney,* 364 F.3d 738, 749 (6th Cir. 2004) (citing *Cornelius,* 473 U.S. at 802). Government restrictions on speech in a designated public forum are subject to strict scrutiny just like restrictions that occur in a traditional public forum. *Miller,* 622 F.3d at 534.

The government may also create a limited forum that "is limited to use by certain groups or dedicated solely to the discussion of certain subjects." *Miller,* 622 F.3d at 534-35 (internal citations omitted). The government may restrict speech in a limited public forum as long as the restrictions do "not discriminate against speech on

the basis of viewpoint" and are "reasonable in light of the purpose served by the forum." *Id.*

Nonpublic fora, by contrast, are areas that have not traditionally been used for expressive activities and that have not been set aside or opened up in a substantial way for expressive activities. Governmental restrictions on access to a nonpublic forum will be upheld as long as they are reasonable and not based on a desire to suppress a particular viewpoint. *Helms v. Zubaty*, 495 F.3d 252, 256 (6th Cir. 2007).

Although the Complaint identifies the address where the auction at issue took place, it provides little detail about the actual location. Other than stating that the auction was a "Public Foreclosure Auction," Plaintiff alleges no facts to support a reasonable inference that the auction occurred at a traditionally public forum or a designated public forum—both of which receive greater constitutional scrutiny with respect to what restrictions the government may impose on speakers in either type of forum. Dkt. 1, Pg. ID 8. Plaintiff's

complaint offers only conclusory statements that Defendants' preventing him from entering the public auction violated his First and Fourteenth Amendment rights. *See generally* Dkt. 1.

Defendants, on the other hand, maintain that the "[a]uction was clearly a limited forum because it was reserved for a certain group of individuals (i.e., prospective purchasers) to bid on foreclosed properties." Dkt. 26, Pg. ID 249. Defendants cite Michigan Statute 211.78m, which provides that a Michigan foreclosing governmental unit shall hold 1 or more property sales at "1 or more convenient locations at which property . . . shall be sold by auction sale." Mich. Comp. Laws Ann. § 211.78m(2). While it may be the case that the Oakland County Treasurer's office creates additional procedures regarding registration and who may attend the auction, the statute cited by Defendants does not appear to limit attendance at the auction to only prospective buyers.

Defendants also rely on Judge Merritt's concurring opinion in *Agema v. City of Allegan*, where he addressed whether a plaintiff satisfied its pleading burden with respect to the public forum doctrine. 826 F.3d 326, 334 (6th Cir. 2016). In *Agema,* Judge Merritt

highlighted plaintiff's insufficient complaint, for it lacked factual allegations to support a reasonable inference that the forum at issue deserved more scrutinizing First Amendment protection. Although Plaintiff argued that the space at issue was a designated public form, Judge Merritt pointed out that "[Plaintiff's] complaint altogether fails to allege any facts indicating that the school space they rented was open to 'indiscriminate use' or 'unfettered access' . . . At most, the facts alleged in the plaintiffs' complaint describe a limited public forum." *Agema*, 826 F.3d at 336 (J. Merritt, concurring). Similarly here, Defendants argue Plaintiff's complaint fails to allege facts indicating that the auction qualified as a traditional public forum or a designated public form, and maintains that the auction was a limited public forum. Dkt. 26, Pg. ID 249.

In evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept as true all well-pleaded factual allegations. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). The Court recognizes that pleadings filed by *pro se* litigants are entitled to a more liberal reading than would

be afforded to formal pleadings drafted by lawyers. *Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Nevertheless, *pro se* litigants must still plead a plausible claim for relief. *Davis v. Prison Health Services*, 679 F.3d 433, 437-38 (6th Cir. 2012). The Court finds that Plaintiff's complaint fails to set forth sufficient facts to support a reasonable inference that the auction occurred at a place that by long tradition or by government declaration had been devoted to assembly and debate, or a place that the government "opened up" for such a purpose. In interpreting Plaintiff's well-pleaded facts in a light most favorable to him, the Court finds that Plaintiff's allegations, at most, support a reasonable inference that the auction took place at limited public forum. Accordingly, the Court will analyze Defendant's motion to dismiss under the standards that apply to a limited public forum.

### iii. Whether the Government's prohibition of Plaintiff's speech passes constitutional muster

The third *Parks* factor requires determining whether the government's prohibition on the speech at issue passes muster under the First Amendment by applying the standard for the applicable forum. *Parks*, 395 F.3d at 647. Restrictions on speech in a limited

public forum must "not discriminate against speech on the basis of viewpoint," and must be "reasonable in light of the purpose served by the forum." *Miller*, 622 F.3d at 534-35.

Plaintiff does not allege he was excluded from the auction based upon the specific *content* of his protected speech. Instead, Plaintiff maintains that he had a right to lawfully object to the public land sale and that he was lawfully permitted to carry out a citizen arrest, as he believed that the Defendants had committed felonies. *See generally* Dkt. 1. Defendants argue that their exclusion of Plaintiff from the auction was reasonable and viewpoint-neutral because Plaintiff's stated purpose—to "arrest" and "prosecute" the named individuals—posed an immediate threat of harm. Dkt. 35, Pg. ID 355-57.

The back-drop to Defendants' decision to exclude Plaintiff was set out in Plaintiff's own words. In his letter to the state court, Plaintiff explained his plan:

> I have filled out a Criminal Complaint with Sworn Affidavit In Support based upon Personal Knowledge and Probable Cause of said Criminal Complaint to arrest Oakland Co Treasurer Andrew Meisner, William Mann, and/or any Person that attempts to stop said Lawful Arrest of said Persons for Felony Fraud, Forgery, Accessory after the Fact, Real Estate Fraud, Tax Fraud, and/or Harboring Persons accused of committing a Felony. I personally dont care if they resist or have a CCW Permit. Because the people assisting me in the arrests will have a CCW Permit and entire arrest will be videotaped for Local and National News and Social Media. The Jury can decide if a Felony was committed by said Public Officials and Employees of Oakland County. Nobody is above the Rule of Law, and certaining not alleged 'officers of the court'.

Dkt. 13-6, Pg. ID 111 (color highlighting added). Plaintiff's intent to enter the tax foreclosure auction with armed people, not only to arrest Meisner and Mann, but also anyone who tried to interfere, reflects a desire by Plaintiff to disrupt the auction proceedings. If Defendants had not prevented Plaintiff from entering the auction and executing his plans, an armed conflict between Plaintiff, his comrades, and law enforcement may well have ensued. Although at the motion to dismiss stage the Court only considers the allegations of the Complaint, Plaintiff's letter provides a background and context for those allegations.

Parsing the language of the Complaint itself, it alleges that the Defendants violated Plaintiff's First Amendment rights by denying Plaintiff the opportunity (1) "to access" the auction "to object"; (2) to "advise the Public" that Plaintiff's property was "still pending" in

the state appellate courts; (3) "to Lawfully execute a State Citizens Arrest of the Defendant(s) et al pursuant to clearly established Michigan Statute to lawfully make a State Citizens Arrest of any Person that commits a Felony without or outside this Plaintiff's presence"; and (4) "to prosecute said named Defendants for committing Felony Fraud, Perjury, Conspiracy, Assessory After the Fact, Harboring Felons, and Retaliation (i.e., Defendants- public officials, and police)." Dkt 1, Pg. ID 11. Thus, the Complaint alleges that the Defendants' conduct violated Plaintiff's First Amendment rights by stopping him from objecting to the sale and by thwarting his plan to conduct a citizen's arrest and prosecution of the public officials at the auction. The Complaint thus states that Defendants restricted both Plaintiff's expressive speech and his non-expressive conduct.

The Supreme Court has found that when speech and nonspeech elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms. *U.S. v. O'Brien*, 391 U.S. 367, 376 (1968). Thus, although

Plaintiff's desire to object to the auction proceedings may be protected speech, the Court need not disregard Plaintiff's nonspeech element (his desire to arrest Defendants and others) when evaluating whether Defendants' alleged conduct in preventing him from entering the auction passes constitutional muster.

In *Cornelius,* the Supreme Court found that the First Amendment does not forbid a viewpoint-neutral exclusion of speakers who would disrupt a nonpublic forum and hinder its effectiveness for its intended purpose. 473 U.S. 788. The Court emphasized that "a nonpublic forum by definition is not dedicated to general debate or the free exchange of ideas." *Cornelius*, 473 U.S. at 811. Although *Cornelius* considered a restriction in a nonpublic forum, the rationale is instructive here because the same standard applies to restrictions that occur in limited public fora. *See, e.g., Helms*, 495 F.3d at 256 (in both nonpublic and limited public fora restrictions must be reasonable and not based on a desire to suppress a particular viewpoint).

Since *Cornelius,* courts have consistently upheld the exclusion of individuals who seek to engage in disruptive conduct in both limited

and nonpublic fora. *See, e.g., Freedom from Religion Foundation, Inc. v. City of Warren, Mich.*, 873 F. Supp. 2d 850, 863 (E.D. Mich. 2012) ("Avoidance of controversy is another reasonable basis for excluding a speaker from a limited public forum."); *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Regional Transit Authority*, 163 F.3d 341, 356 (6th Cir. 1998) (finding a regulation of speech in a nonpublic forum is reasonable if the speech will negatively affect that government's ability to achieve the purpose for which it created the forum).

Plaintiff's Complaint alleges that Defendants violated his free speech by not allowing him to enter the auction in order to voice his objection and to take action by conducting citizen arrests of Defendants and potentially others. Dkt. 1, Pg. ID 11. Taking these allegations as true, even where Plaintiff had the dual purpose of expressing his objection and arresting the County officials, it was reasonable in light of the purpose of the forum—and view-point neutral—for Defendants to exclude Plaintiff from the auction to prevent him from engaging in disruptive and potentially dangerous behavior. Such disruptive conduct would impede the government's ability to

carry out the intended purpose of the forum—to sell foreclosed homes to auction participants—and also create a threat to public safety. *See Commercial Workers Union*, 163 F.3d at 356. Because the Complaint alleges that Plaintiff was prevented from exercising his protected speech not because of its viewpoint, but because of the same reasonable restriction that prevented him for carrying out non-expressive, unprotected conduct that presented a danger to public safety, the Complaint fails to state claim for a First Amendment violation. Consequently, this claim must be dismissed.

For the reasons outlined above, Defendants' motion to dismiss is **GRANTED**. The Court need not reach Defendants' remaining objections (that the R&R failed to address Defendants' qualified immunity argument and that the R&R was not clear on whether Defendants have an immediate right to interlocutory appeal); they are therefore **OVERRULED AS MOOT**.

### c. Plaintiff's Objections

Plaintiff has submitted as his objections a document containing an introductory paragraph, 22 sequentially numbered paragraphs, and a relief section containing non-numbered paragraphs. Dkt. 36.

But these paragraphs do not mention the R&R, much less articulate specific objections to Magistrate Judge Stafford's recommendations. The document instead appears to be a restatement of factual allegations and legalese that Plaintiff has submitted to the Court at various times throughout the case. For example, Plaintiff uses **bold text**, <u>underlined text</u>, or ALL CAPS to emphasize these legal concepts:

- Under penalty of perjury;
- Fraud upon the Court; and
- Doctrine of Laches

Dkt. 36, Pg. IDs 364, 368, 369 (emphasis removed). But the content of the Objections does not explain what was incorrect about the R&R or why the Plaintiff believes it was wrong.

Accordingly, because Plaintiff's objections lack specificity and because Defendants' second motion to dismiss requires the Court to dismiss the case, Plaintiff's objections are **OVERRULED**.

## V. Conclusion

For the foregoing reasons, Defendants' objections (Dkt. 35) are **SUSTAINED IN PART** and **OVERRULED IN PART**; Plaintiff's objections (Dkt. 36) are **OVERRULED**; the Report and

Recommendation (Dkt. 32) is **REJECTED IN PART AND ADOPTED IN PART**; Plaintiff's Motions (Dkts. 27, 29, and 31) are **DENIED**; Defendants' second motion to dismiss (Dkt. 26) is **GRANTED**; and the case is **DISMISSED**. Because the Court must dismiss the case, all other pending motions (Dkts. 47 and 48) are **DENIED AS MOOT**.

**SO ORDERED.**

Dated: September 20, 2017     s/Terrence G. Berg
_____
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

### Certificate of Service

I hereby certify that this Order was electronically filed, and the parties and/or counsel of record were served on September 20, 2017.

s/A. Chubb
_____
Case Manager